1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

11 JAMES PLAS SAMS,                    Case No. EDCV 17-1848 SVW (SS)

12                  Plaintiff,

                                     **MEMORANDUM DECISION AND ORDER**
13        v.

                                     **DISMISSING COMPLAINT WITH**
14 COUNTY OF RIVERSIDE, et al.,

                                     **LEAVE TO AMEND**
15                  Defendants.

16

17                                        **I.**

18                                  **INTRODUCTION**

19

20        Pending before the Court is a civil complaint filed by James

21 Plas Sams ("Plaintiff"), a state prisoner proceeding <u>pro se</u>,

22 alleging violations of his civil rights pursuant to 42 U.S.C.

23 § 1983 and several state law claims.  ("Complaint" or "Compl.,"

24 Dkt. No. 1).  Congress mandates that district courts perform an

25 initial screening of complaints in civil actions where a prisoner

26 seeks redress from a governmental entity or employee.  28 U.S.C.

27 § 1915A(a). This Court may dismiss such a complaint, or any portion

28 thereof, before service of process if the complaint (1) is

frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1-2); see also Lopez v. Smith, 203 F.3d 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc). For the reasons stated below, the Complaint is DISMISSED with leave to amend.[1]

## II.

### ALLEGATIONS OF THE COMPLAINT

Plaintiff sues: (1) the County of Riverside; (2) the City of Jurupa Valley; Riverside County Sheriff's Department ("RCSD") Deputies (3) Aaron Avila, (4) Bridgette Recksiek, (5) Lycopolous, and (6) Melendez; Child Protective Services ("CPS") social workers (7) Heather Polak and (8) Alison M. Amaro; attorneys (9) Anastasia Georggin, (10) Dawn Shipley, (11) Theresa Devries, (12) Stacy McCoy, and (13) Melissa A. Chaitin; (14) Deputy District Attorney Jennifer Flores; and (15) Doe Defendant #1, a "transcriber" with the initials "CP." All non-municipal Defendants are sued in their individual capacity only. (Compl. at 3-7 (continuous pagination)).

Plaintiff's claims arise from his arrest, trial and conviction on domestic violence charges and the juvenile dependency proceedings that resulted in his daughter's temporary removal from

---

[1] A magistrate judge may dismiss a complaint with leave to amend without the approval of a district judge. See McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

her parents' care after his arrest. According to the Complaint, on April 11, 2016, Deputies Recksiek and Avila questioned Plaintiff without reasonable suspicion. (Id. at 8). The next day, April 12, 2016, Recksieck and Avila returned and told Plaintiff that they were not sure that they believed what he had told them the day before. (Id. at 9). Plaintiff's wife told Recksiek that Plaintiff had assaulted her and cut her shin with a pocket knife. (Id. at 11-12). Recksiek and Avila instructed Lycopolous and Melendez to arrest Plaintiff and take him to the RCSD Jurupa Valley Station. (Id. at 10). Deputies left Plaintiff with his arms handcuffed behind his back for seven hours with no food, water, bathroom breaks, medical attention or access to his medications. (Id.). Plaintiff was in "an extreme amount of pain and hunger." (Id.).

Recksiek and Avila wrote a police report on the day of Plaintiff's arrest and "conspire[d] to fabricate evidence" in the report. (Id. at 13). For example, even though Avila spoke to a witness who told him that Plaintiff was the victim of his wife's physical abuse, and that his wife had "[a]lmost killed" him in the past, Recksiek's and Avila's report stated that the witness told them that she "had never talked to V-1 [presumably, Plaintiff's wife] about the abuse." (Id.). The report also falsely stated that Plaintiff told the Deputies that he liked knives, and omitted any reference to Plaintiff's need for self-defense in the altercation with his wife. (Id.). The Deputies also knew from interviewing Plaintiff's wife that Plaintiff was "innocent and could not have stabbed his wife" from where he was sitting when the stabbing purportedly occurred, but falsely stated in the report

that Plaintiff was sitting next to his wife at the time of the attack. (Id. at 14).

Recksiek and Avila further discriminated against Plaintiff based on his race and gender because even though his wife admitted to them that she tried to choke Plaintiff to death, they did not arrest her for domestic violence. (Id. at 16). Recksiek repeated the false statements in his report at Plaintiff's preliminary hearing, thereby committing "judicial deception" to obtain an unwarranted probable cause finding. (Id. 14-15, 17).

After Plaintiff's arrest, CPS social workers Polak and Amaro "conspired to obtain jurisdiction" over Plaintiff's daughter, even though the domestic violence charges against Plaintiff involved only his wife and his daughter was not in danger. (Id. at 18). The attorneys in the CPS proceedings -- Georggin (representing Plaintiff), Shipley (representing Plaintiff's daughter), DeVries (representing Plaintiff's wife), and McCoy (representing child welfare) -- also conspired to arrange for the "illegal detention of Plaintiff's child for ten months." (Id. at 19). Plaintiff further alleges that there were numerous violations of the California Rules of Court and other state statutory procedural requirements during the juvenile dependency hearings, (id. at 20), but none of these attorneys made any objections to the due process violations. (Id. at 21). Plaintiff's counsel on appeal of the juvenile proceedings, Chaitin, was also part of the conspiracy because she refused "to argue the points on appeal" in order to hide the constitutional violations. (Id. at 19, 22).

At Plaintiff's criminal trial, Avila testified that he did not investigate or talk to deputies involved in prior calls, who would have told him that Plaintiff's wife "keeps making false accusations." (Id. at 12). Both Recksiek and Avila "acted unreasonably in failing to investigate and pursue exculpatory evidence." (Id.). Flores, the prosecutor, repeated the falsehoods in Recksiek's and Avila's report and joined in a conspiracy with Recksiek, Avila, and the unnamed transcriber "to continue to fabricate evidence" by falsifying testimony in a transcript of a video. (Id. at 23-24).

Plaintiff appears to be attempting to raise constitutional claims against the individual Defendants for false arrest, false imprisonment, excessive force, conspiracy, equal protection, due process, and malicious prosecution. (Id. at 8-24). Plaintiff contends that Riverside County and Jurupa Valley are liable for their failure to train and supervise the individual Defendants. (See, e.g., id. at 8, 11). Plaintiff also raises nine state law causes of action for violations of his state constitutional rights under California Civil Code §§ 51.7 and 52.1; California Penal Code § 13701(b); and for intentional infliction of emotional distress. (Id. at 25-29). Plaintiff seeks unspecified compensatory and punitive damages, as well as costs and attorneys' fees. (Id. at 30).

\\
\\
\\
\\

Under 28 U.S.C. § 1915A(b), the Court must dismiss the Complaint due to pleading defects. However, the Court must grant a pro se litigant leave to amend his defective complaint unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). For the reasons discussed below, it is not "absolutely clear" that at least some of the defects of Plaintiff's Complaint could not be cured by amendment. The Complaint is therefore DISMISSED with leave to amend.

**A.    Some Claims May Be Barred By The Heck Doctrine**

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that a civil rights complaint for money damages must be dismissed if judgment in favor of the plaintiff would undermine the validity of his conviction or sentence, unless the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. However, the Heck Court also explained that if a "plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to

the suit." Id. at 487 (footnotes omitted). Even where a claim survives the Heck bar, to obtain money damages, the plaintiff must show that the defendant's actions "caused him actual, compensable injury," which "does not encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." Id. at 487 n.7.

Accordingly, the Ninth Circuit has found in a case where the plaintiff's assault conviction had not been overturned that the Heck doctrine barred a false arrest claim that would have required a finding that there was no probable cause for plaintiff's arrest. Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996) (per curiam). However, the court also concluded that Heck would not preclude the same plaintiff's excessive force claim "[b]ecause a successful section 1983 action for excessive force would not necessarily imply the invalidity of [plaintiff's] arrest or conviction[.]" Id.; see also Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998) (Heck barred false arrest and false imprisonment claims until conviction was invalidated); Whitaker v. Garcetti, 486 F.3d 572, 583-84 (9th Cir. 2007) (claim alleging that defendants falsified warrant application was Heck-barred because it challenged the "search and seizure of the evidence upon which [plaintiff's] criminal charges and convictions were based").

Plaintiff alleges that RCSD Deputies arrested him without probable cause, fabricated "evidence" in the form of a police report, and conspired to commit "judicial deception" that resulted in his wrongful conviction. The specific scope and bases of

Plaintiff's claims are not entirely clear. However, to the extent that Plaintiff is attempting to challenge the legal grounds for his arrest or the propriety of his conviction, the Heck doctrine may bar any claims that, if successful, would invalidate the conviction or sentence. In any amended complaint, Plaintiff should consider whether the alleged claims are barred by the Heck doctrine. Furthermore, for any claims not subject to a Heck bar, Plaintiff must show compensable harm or injury to him personally apart from the fact of his incarceration.

**B. Plaintiff Fails To State A Claim Against Attorneys Georggin, Shipley, DeVries, McCoy And Chaitin Because They Are Not State Actors**

To state a claim under section 1983, a plaintiff must allege that the deprivation of a right secured by the federal constitution or statutory law was committed by a person acting under color of state law. Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "While generally not applicable to private parties, a § 1983 action can lie against a private party when he is a willful participant in joint action with the State or its agents." Kirtley v. Rainey, 326 F.3d 1088, 1092-94 (9th Cir. 2003) (describing "public function," "joint action," "governmental compulsion," and "government nexus" tests under which a private actor may be deemed to be acting under color of state law).

Plaintiff does not state whether Georggin, Shipley, DeVries, and McCoy, who were involved in his daughter's juvenile dependency

hearings, are private attorneys, public defenders, or court-appointed attorneys. He does note that Chaitin, who was his lawyer on appeal of those proceedings, was appointed. (Compl. at 21). However, for purposes of § 1983, any such distinctions may be largely irrelevant. The Supreme Court has repeatedly held that when public defenders or court-appointed attorneys are acting in their role as advocates, they are not acting under color of state law for § 1983 purposes. See Georgia v. McCollum, 505 U.S. 42, 53 (1992); Polk County v. Dodson, 454 U.S. 312, 320-25 (1981); see also Jackson v. Brown, 513 F.3d 1057, 1079 (9th Cir. 2008); Miranda v. Clark County, Nev., 319 F.3d 465, 468 (9th Cir. 2003) (en banc) (clarifying that public defender's office may be sued for unconstitutional policies). As the Supreme Court has explained, public defenders do not act under color of state law because their conduct as legal advocates is controlled by professional standards independent of state authority. See Polk County, 454 U.S. at 321.

Furthermore, Plaintiff's complaint that the attorneys are liable for failing to raise certain objections on his behalf during the juvenile dependency proceedings lack substance. Plaintiff does not allege that Shipley, DeVries and McCoy represented him in those proceedings, so these defendants owed no duty to him. To the extent that Plaintiff is contending in the alternative that Georggin or Chaitin committed professional malpractice by failing to object, (Compl. at 21), the court does not have "subject matter jurisdiction to consider these claims of tortious conduct because they fail to allege the tortious violation of any federally protected right." Franklin v. State of Or., State Welfare Div.,

662 F.2d 1337, 1344 (9th Cir. 1981) (dismissing prisoner's malpractice claim against his appellate counsel for lack of jurisdiction). Accordingly, the Complaint must be dismissed, with leave to amend.

C. **Plaintiff Fails To State A Claim Against Deputy District Attorney Flores**

Plaintiff alleges that after Deputies Recksiek and Avila "fabricated evidence in their police report" by including false witness statements, the "Riverside County District Attorneys Office then continued the same fabrications then added more to the different transcripts of the videos" from his criminal proceedings. (Compl. at 23). Although this allegation identifies only the "Riverside County District Attorney's Office" and does not clearly articulate a claim against Deputy District Attorney Flores personally, Plaintiff appears to contend that Flores is liable for repeating in some fashion the alleged falsehoods in the police report and for conspiring with a transcriber (perhaps a court reporter) to include misrepresentations in one or more video transcripts. Depending on the facts that Plaintiff may ultimately be able to allege, Flores may be entitled to protection from suit pursuant to the doctrine of absolute prosecutorial immunity.

The doctrine of absolute prosecutorial immunity "applies to § 1983 claims." Garmon v. Cnty. of Los Angeles, 828 F.3d 837, 842 (9th Cir. 2016). Pursuant to that doctrine, "[s]tate prosecutors are absolutely immune from § 1983 actions when performing functions

'intimately associated with the judicial phase of the criminal process,' or, phrased differently, "when performing the traditional functions of an advocate." Id. (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976); Kalina v. Fletcher, 522 U.S. 118, 131 (1997)). Prosecutorial immunity applies in such instances even when the act is "malicious or dishonest." Genzler v. Longanbach, 410 F.3d 630, 637 (9th Cir. 2005). Accordingly, a prosecutor is absolutely immune from suit for "'initiating a prosecution' and 'presenting the State's case,' and during 'professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial . . . after a decision to seek an indictment has been made.'" Garmon, 828 F.3d at 843 (quoting Imbler, 424 U.S. at 431; Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)). A prosecutor is also protected by absolute immunity "in connection with the preparation of an arrest warrant," during "appearances before a grand jury," "in a probable cause hearing," and "in trial." Lacey, 693 F.3d at 933 (citing Kalina, 522 U.S. at 129; Burns v. Reed, 500 U.S. 478, 490 & n.6 (1991); Imbler, 424 U.S. at 430-31); see also Milstein v. Cooley, 257 F.3d 1004, 1012 (9th Cir. 2001) ("Appearing in court to argue a motion is a quintessential act of advocacy.").

Absolute immunity applies even if it "leave[s] the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." Imbler, 424 U.S. at 432; see also Broam v. Bogan, 320 F.3d 1023, 1029-30 (9th Cir. 2003) ("A prosecutor is absolutely immune from liability for failure to investigate the accusations against a defendant

11

before filing charges. . . . A prosecutor is also absolutely immune from liability for the knowing use of false testimony at trial."). However, prosecutors are entitled only to "qualified immunity, rather than absolute immunity, when they perform administrative functions, or 'investigative functions normally performed by a detective or police officer.'" Genzler, 410 F.3d at 636 (quoting Kalina, 522 U.S. at 126).[2]

Courts look to the "nature of the function performed" when determining if a prosecutor's actions are those of an advocate, which are protected by absolute immunity, or of an administrator or investigator, which are not. Garmon, 828 F.3d at 843 (quoting Buckley, 509 U.S. at 269). For example, "decisions to hire, promote, transfer and terminate" employees, "which do not affect the prosecutor's role in any particular matter," are generally deemed administrative functions not protected by absolute immunity. Lacey, 693 F.3d at 931. Similarly, "[a]bsolute immunity does not apply when a prosecutor 'gives advice to police during a criminal investigation,' 'makes statements to the press,' or 'acts as a complaining witness in support of an arrest warrant application.' "

---

[2] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citation omitted). In analyzing whether qualified immunity applies, a court must determine "whether, taken in the light most favorable to Plaintiffs, Defendants' conduct amounted to a constitutional violation, and . . . whether or not the right was clearly established at the time of the violation." Bull v. City and Cnty. of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010) (citation and alteration omitted).

Garmon, 828 F.3d at 843 (quoting Van de Kamp v. Goldstein, 555 U.S. 335, 343 (2009)) (brackets omitted; emphasis added); see also Milstein, 257 F.3d at 1101 (filing a false crime report is not protected by absolute immunity). Absolute immunity also does not apply if a prosecutor knowingly fabricates evidence. Garmon, 828 F.3d at 843; see also Genzler, 410 F.3d at 638 (absolute immunity did not apply where prosecutor told witness to lie in meeting held prior to preliminary hearing because the prosecutor was "engaged in the process of acquiring or manufacturing evidence during performance of police-type investigative work").

It is entirely unclear what Plaintiff means by the allegation that the District Attorney's Office "continued the same fabrications" in Recksiek's and Avila's report. (Compl. at 23). For example, if by "continued" Plaintiff means that Flores merely accepted the allegations in the report and relied on them (unaware that they were fabricated) in court proceedings, Flores' actions would arguably appear to be protected by absolute prosecutorial immunity. Furthermore, even the allegation that Flores "conspired" with the transcriber and others to insert falsehoods into a transcript of "the video" is ambiguous. It is possible that Plaintiff may be referring to a video of his interview with Avila following his arrest. (Id.). However, Plaintiff does not allege any facts showing why he believes the prosecutor had any role in preparing the transcript. Nor does he state if the allegedly false assertions in the transcript were ever used against him in a criminal proceeding. Accordingly, the Complaint must be dismissed, with leave to amend.

**D.    Plaintiff Fails To State A Claim Against CPS Social Workers Polak And Amaro**

Plaintiff's only allegation against social workers Polak and Amaro is that they "conspired" to "obtain jurisdiction," by which Plaintiff apparently means temporary custody, of his daughter following his arrest. (Compl. at 18). "Parents and children have a well-elaborated constitutional right to live together without governmental interference. . . . That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000); see also Keates v. Koile, 883 F.3d 1228, 1236(9th Cir. 2018) (explaining constitutional standards for evaluating claims based upon removal of children). Here, however, Plaintiff alleges that his daughter's removal was pursuant to juvenile dependency proceedings in which he, his wife, his daughter, and "social services" were each separately represented by counsel. Therefore, Plaintiff appears to allege that he was in fact afforded the bedrock due process rights of notice and an opportunity to be heard. See Kirk v. I.N.S., 927 F.2d 1106, 1107 (9th Cir. 1991) ("Procedural due process requires adequate notice and an opportunity to be heard.").

At most, Plaintiff alleges that the proceedings were marked by certain irregularities, such as the failure to strictly adhere to California Rules of Court and other state law procedural requirements. (See Compl. at 20) (alleging, inter alia, violations

of California Rules of Court deadlines for filing dependency petition and distributing social study). The Complaint does not clearly explain how or if Polak and Amaro were responsible for these violations. However, even assuming that Plaintiff may somehow be able to show that Polak and Amaro bore some responsibility for the procedural irregularities, the Complaint still fails to state a claim against these two Defendants.

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "State law establishes a liberty interest if it places substantive limitations on the exercise of official discretion." Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993) (citing Olim v. Wakinekona, 461 U.S. 238, 249 (1983)).

The rules and regulations which Plaintiff contends were violated appear to set forth purely procedural, not substantive, standards. However, the mere fact that certain state law deadlines were not met, without more, does not provide a basis for a constitutionally cognizable liberty interest. See Pratt v. Rowland, 769 F. Supp. 1128, 1134 n.5 (N.D. Cal. 1991) ("While these regulations may indicate that plaintiff has a protected liberty

interest in not being subject to discipline without due process of law, he has no federal constitutional right to the particular procedures established by state law.  The nature of the process that is due plaintiff is determined by federal, not state law."); Campbell v. Woodford, 2006 WL 2849883, at *1 (E.D. Cal. Oct. 3, 2006) ("State laws and regulations that contain merely procedural requirements, even if those requirements are mandatory under state law, do not give rise to a constitutionally cognizable liberty interest.").  These claims are dismissed, with leave to amend.

**E.   Plaintiff Fails To State A Claim Against Deputies Lycopolous And Melendez**

The only allegations in the Complaint specifically mentioning Deputies Lycopolous and Melendez by name assert that they were ordered by Recksiek and Avila to arrest Plaintiff and take him to the RCSD Jurupa Valley Station, and that Lycopolous and Melendez "had an agreement to subject Plaintiff to . . . inhumane treatments" at the Station.  (Compl. at 10).  To establish a civil rights violation, a plaintiff must show either the defendant's direct, personal participation in the constitutional violation, or some sufficient causal connection between the defendant's conduct and the alleged violation.  See Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011).  However, the Complaint is utterly devoid of any factual allegations identifying specifically whether Lycopolous or Melendez (or, for that matter, Recksiek or Avila) actually personally inflicted any "inhumane treatment" on Plaintiff, and if so, what each Defendant separately did.

16

Nor does the Complaint allege any facts, as opposed to legal conclusions, that would support the existence of a conspiracy. To establish a conspiracy under section 1983, a plaintiff must show "an agreement or meeting of minds" by defendants to violate the plaintiff's constitutional rights. Woodrum v. Woodward County, Okl., 866 F.2d 1121, 1126 (9th Cir. 1989). "The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage." Mendocino Evntl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301 (9th Cir. 1999) (footnote, internal quotation marks, and brackets omitted). Because Plaintiff does not describe what Lycopolous and Melendez individually did, it is not possible to determine whether they "committed acts that are unlikely to have been undertaken without an agreement," which would allow for an inference of a conspiracy. Id. Accordingly, the Complaint must be dismissed, with leave to amend.

**F.    Plaintiff Fails To State A Claim Against The Video Transcriber**

Plaintiff claims that the person who transcribed the audio portion of a video (or videos) conspired with Recksiek, Avila and Flores to "continue to fabricate evidence" by inserting errors in the transcript. (Compl. at 24). Plaintiff does not clearly explain what the video was and whether and how the transcript was used in any of his criminal proceedings. Accordingly, Plaintiff fails to state a claim against the "transcriber."

Court reporters do not enjoy absolute judicial immunity for their actions. Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993). However, they may be entitled to qualified immunity, depending on the factual circumstances. Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983); Shahin v. Darling, 606 F. Supp. 2d 525, 543 (D. Del. 2009) ("While court reporters are not entitled to absolute judicial immunity simply by virtue of their position, quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters, who are acting in their official capacities.") (internal citations omitted); Samuel v. Michaud, 980 F. Supp. 1381, 1404 (D. Idaho 1996) (federal clerks responsible for transcribing proceedings may be protected by qualified immunity); Taylor v. Sacramento Cnty., 2009 WL 545784, at *2 (E.D. Cal. Mar. 4, 2009) ("Court reporters enjoy qualified, not absolute immunity.").

Whether or not qualified immunity applies on the facts alleged here, to state a civil rights claim based on an inaccurate transcript, the plaintiff must allege that the error had a material adverse effect on his criminal proceedings. As the Third Circuit explained in a section 1983 case,

> Analysis properly begins with the observation that plaintiff does not have a constitutional right to a totally accurate transcript of his criminal trial. His constitutional rights would be violated only if inaccuracies in the transcript adversely affected the outcome of the criminal proceeding. And, since the jury

which convicted plaintiff and sentenced him to death acted on the basis of the evidence they saw and heard, rather than on the basis of the written transcript of the trial -- which was, of course, non-existent until after the trial was completed -- this means that a constitutional violation would occur only if the inaccuracies in the transcript adversely affected appellate review in the state courts.

Tedford v. Hepting, 990 F.2d 745, 747 (3d Cir. 1993); see also Shahin, 606 F. Supp. 2d at 543 ("[A] plaintiff does not have a constitutional right to an error free transcript. . . . The threshold question, therefore, is . . . whether plaintiff has alleged deficiencies in the trial transcript substantial enough to call into question the validity of the appellate process in the state courts.") (internal quotation marks and citation omitted); Stewart v. Banuelos, 2016 WL 922551, at *6 (C.D. Cal. Jan. 25, 2016), report and recommendation adopted, 2016 WL 1032762 (C.D. Cal. Mar. 9, 2016) ("Because causation is an element of a Section 1983 claim, a plaintiff states a claim for a violation of his constitutional rights only if the inaccuracies in the trial transcript adversely affected the outcome of appellate proceedings.").

Furthermore, several courts have concluded that civil rights claims against court reporters for transcription errors, even when the errors are alleged to have had a material adverse effect on criminal proceedings, may be barred by Heck. As one court

explained, "a successful claim by [plaintiff] regarding his transcripts would imply the invalidity of his conviction, but because [plaintiff] has not demonstrated that his underlying conviction has been invalidated, his claim against the Defendant is not cognizable pursuant to Heck." Dyches v. Martin, 2014 WL 1093133, at *4 (D. S.C. Mar. 17, 2014), aff'd, 579 F. App'x 162 (4th Cir. 2014); see also Murphv v. Bloom, 443 F. App'x 668, 669 (3d Cir. 2011) (allegation in civil rights action that prosecutor altered inmate's trial transcript was Heck-barred because it implied the invalidity of his conviction); Tedford, 990 F.2d at 749-50 (due process claim for damages against court reporters for allegedly tampering with transcript was not cognizable in a section 1983 action "absent a successful challenge to the underlying conviction").

Plaintiff's vague allegations do not describe whether the transcript was used in any criminal proceeding, and if so, whether it had an adverse material effect on those proceedings. The Court cannot state on the facts alleged whether success on Plaintiff's claim against the transcriber would undermine the validity of his conviction, and thus be subject to a Heck bar. Accordingly, the Complaint is dismissed, with leave to amend.

## G. Plaintiff Fails To State A Claim Against The County Of Riverside And The City Of Jurupa Valley

### 1. Riverside County

Plaintiff summarily asserts that Riverside County is liable for its failure to train and supervise the individually named Defendants. (See, e.g., Compl. at 15 ("The County of Riverside and City of Jurupa Valley failed to train employees in adequate programs addressing false statements and omissions, the failure to train was the moving force behind the violation.")). A governmental entity may be liable under section 1983 where a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978). To hold a governmental entity liable under Monell, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted; alterations in original).

The Supreme Court instructs that to state a claim, a plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007). "A claim has facial plausibility when the plaintiff pleads _factual_ content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added). The Ninth Circuit has addressed these standards in the context of a Monell claim. See Dougherty v. City of Covina, 654 F.3d 892, 900-901 (9th Cir. 2011). The Dougherty Court noted that "failure to train" may state a cognizable Monell claim where "the need to train was obvious and the failure to do so made a violation of constitutional rights likely." Id. at 900. However, the Court also emphasized that pursuant to Twombly, "[t]he complaint must contain more than 'a formulaic recitation of the elements of a cause of action' . . . [and] must plead 'enough facts to state a claim to relief that is plausible on its face.'" Id. at 897 (quoting Twombly, 550 U.S. at 555 & 570). Applying that standard, the Court concluded that the plaintiff's Monell claim, which alleged only that the defendant's policies caused the constitutional violations and were the "moving force and/or affirmative link behind the violation of Plaintiff's constitutional rights," failed to state a claim. Dougherty, 654 F.3d at 900. The Court determined that such conclusory assertions "lacked any factual allegations regarding key elements of the Monell claims, or, more specifically, any facts demonstrating that [plaintiff's] constitutional deprivation was the result of a custom or practice of the City of Covina or that the custom or practice was the 'moving force' behind his constitutional deprivation." Id. at 900-901.

Here, Plaintiff's conclusory, factually devoid claims against the County of Riverside are nothing more than the "formulaic recitation of a cause of action's elements" proscribed by the Supreme Court in _Twombly_ and by the Ninth Circuit in the specific context of a _Monell_ claim in _Dougherty_. Accordingly, the Complaint must be dismissed, with leave to amend.

### 2. City Of Jurupa Valley

Plaintiff also sues the City of Jurupa Valley on the ground that it failed to supervise and train the individually-named Defendants. The claims against the City fail not only for the same reasons as the claims against the County, but also because none of the Defendants is alleged to be an employee of the City of Jurupa Valley. The only reference to Jurupa Valley in the Complaint states that Plaintiff was taken to the RCSD Jurupa Valley Station following his arrest. However, that station is operated by the Riverside County Sheriff's Department; therefore, its employees work for the County of Riverside, not the City of Jurupa Valley. Accordingly, the Complaint must be dismissed, with leave to amend.

\\
\\
\\
\\
\\

**H.   Plaintiff's State Law Claims Fail To State A Claim**

**1.   California Civil Code § 52.1 ("Bane Act")**

"California's Bane [Civil Rights] Act provides a private right of action under state law for damages and injunctive relief where a person 'interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state.'" Green v. City and County of San Francisco, 751 F.3d 1039, 1044 n.4 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1(a)).  To prevail on a Bane Act claim, a plaintiff must show "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." Jones v. Kmart Corp., 17 Cal. 4th 329, 334 (1998); see also Venegas v. Cnty. of Los Angeles, 32 Cal. 4th 820, 843 (2004) (the provisions of § 52.1 do not extend to "ordinary tort actions" but "are limited to threats, intimidation or coercion that interfere with a constitutional or statutory right").

As explicitly provided in the statute, however, a defendant's "'[s]peech alone is not sufficient to support an action [under the Bane Act] . . . except upon a showing that the speech itself threatens violence against a specific person or group of persons' who have a reasonable fear of violence because 'the person threatening violence had the apparent ability to carry out the

threat.'" <u>Quezada v. City of Los Angeles</u>, 222 Cal. App. 4th 993, 1007 (2014) (quoting Cal. Civ. Code § 52.1(j)). Furthermore, while "[c]oercion is, of course, inherent in any arrest" or detention, not all types of coercion will suffice to establish a claim under section 52.1. <u>Bender v. Cnty. of Los Angeles</u>, 217 Cal. App. 4th 968, 978 (2013). For example, "where coercion is inherent in the constitutional violation alleged, <u>i.e.</u>, an overdetention in County jail, the statutory requirement of 'threats, intimidation, or coercion' is not met. The statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." <u>Shoyoye v. Cnty. of Los Angeles</u>, 203 Cal. App. 4th 947, 959 (2012).

Plaintiff attempts to allege several state law claims based on section 52.1. However, the claims typically do not involve any form of threats, intimidation or coercion by Defendants to prevent Plaintiff from exercising a constitutional right. For example, Plaintiff alleges that the alleged conspiracy to falsify a video transcript, (Compl. at 29), and Recksiek's and Avila's insertion of allegedly false statements in their police report, (<u>id.</u> at 26), violated his rights under section 52.1, even though Plaintiff was not even present when these wrongs were purportedly committed and no threat or effort to intimidate or coerce was ever communicated to him. Accordingly, the Complaint must be dismissed, with leave to amend.

\\

\\

\\

## 2. California Civil Code § 51.7 ("Ralph Act")

The Ralph Act guarantees people in California "the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any [listed] characteristic." Cal. Civ. Code § 51.7(a). The listed characteristics protected under the Ralph Act include "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status . . . ." Id. (incorporating by reference Cal. Civ. Code 51(b)). To establish a section 51.7 claim, a plaintiff must show "'(1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's race; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.'" Warren v. Marcus, 78 F. Supp. 3d 1228, 1248 (N.D. Cal. 2015) (quoting Knapps v. City of Oakland, 647 F. Supp. 2d 1129, 1167 (N.D. Cal. 2009)).

Just as he did for his claims under section 52.1, Plaintiff alleges that the alleged conspiracy to falsify a video transcript, (Compl. at 29), and Recksiek's and Avila's allegedly false statements in their police report, (id. at 26), violated his rights under section 51.7. However, the Complaint does not allege that these actions were accompanied by threats or violent acts. Nor does Plaintiff allege any facts showing that the acts were

26

motivated by animus against him for his race or sex. Accordingly, the Complaint must be dismissed, with leave to amend.

### 3. California Penal Code § 13701(b)

The Complaint alleges that Defendants "failed to discharge [their] statutory duty" under California Penal Code § 13701(b) to "identify the dominant aggressor" and "consider continuing abuse . . . history between the parties involved" in a domestic dispute. (Compl. at 19) (quoting Cal. Penal Code § 13701(b)). However, even putting aside the threshold question of whether this provision of the Penal Code provides for a private cause of action, Plaintiff misconstrues the statute. Section 13701 requires law enforcement agencies to "develop, adopt, and implement written policies and standards for officers' responses to domestic violence," id. § 13701(a), and provides, among other requirements, that the "written policies shall encourage the arrest of domestic violence offenders if there is probable cause that an offense has been committed." Id. § 13701(b); see also id. § 13701(c) (providing that local policies must be available to the public and "include specific standards" for felony and misdemeanor arrests, citizen arrests, verification and enforcement of temporary restraining orders and "stay-away" orders, etc.). In other words, the statute directs law enforcement agencies to adopt domestic violence policies and develop "specific standards" to be disclosed to the public, but does not set forth the substantive standards themselves, much less provide penalties for an individual officer's violation of a policy that may eventually be adopted by

27

a local law enforcement agency.  Accordingly, the Complaint must be dismissed, with leave to amend.

**4.    Intentional Infliction Of Emotional Distress**

"The elements of a prima facie case for the tort of intentional infliction of emotional distress are:  "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Melorich Builders, Inc. v. Superior Court, 160 Cal. App. 3d 931, 935 (1984) (internal quotation marks and citation omitted). "Liability for intentional infliction of emotional distress extends 'only to conduct so extreme and outrageous as to go beyond all possible bonds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Coleman v. Republic Indem. Ins. Co. of California, 132 Cal. App. 4th 403, 416 (2005) (quoting Alcorn v. Anbro Engineering, Inc., 2 Cal. 3d 493, 499, n.5 (1970)); see also Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 852 (9th Cir. 2004) (even where a defendant's actions are unlawful, "it is not enough [under California law] that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." (internal quotation marks omitted)).

Plaintiff's conclusory allegations fail to show "conduct so extreme and outrageous as to go beyond all possible bonds of decency." <u>Coleman</u>, 132 Cal. App. 4th at 416. Accordingly, the Complaint must be dismissed, with leave to amend.

## V.

### CONCLUSION

For the reasons stated above, the Complaint is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a First Amended Complaint. In any amended complaint, the Plaintiff shall cure the defects described above. **Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the original complaint.** The First Amended Complaint, if any, shall be complete in itself and shall bear both the designation "First Amended Complaint" and the case number assigned to this action. It shall not refer in any manner to any previously filed complaint in this matter.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, <u>a copy of</u>**

**which is attached.** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff is strongly encouraged to keep his statements concise and to omit irrelevant details. **It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff is also advised to omit any claims for which he lacks a sufficient factual basis.**

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey court orders pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiff's convenience.**

DATED: March 26, 2018

_____
/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**