1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   JAMES PLAS SAMS,                    Case No. EDCV 17-1848 SVW (SS)

12                    Plaintiff,

13        v.                            **ORDER DISMISSING SECOND AMENDED**

14   COUNTY OF RIVERSIDE, et al.,       **COMPLAINT WITH LEAVE TO AMEND**

15                    Defendants.

16

17                            **I.**

18                        **INTRODUCTION**

19

20        James Plas Sams ("Plaintiff"), a state prisoner proceeding

21   pro se, initiated this action on September 11, 2017 by filing a

22   civil rights complaint pursuant to 42 U.S.C. § 1983. ("Complaint,"

23   Dkt. No. 1). On March 26, 2018, the Court dismissed the Complaint

24   with leave to amend due to several pleading defects. (Dkt. No.

25   14). On April 30, 2018, Plaintiff filed a First Amended Complaint,

26   ("FAC," Dkt. No. 17), which the Court also dismissed with leave to

27

28

amend.[1]  (Dkt. No. 18).  Now pending before the Court is Plaintiff's Second Amendment Complaint, filed on July 17, 2018.  ("Second Amended Complaint" or "SAC," Dkt. No. 23).  The Court has screened the Second Amended Complaint as prescribed by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e.  For the reasons discussed below, the Court DISMISSES Plaintiff's Second Amended Complaint with leave to amend.[2]

## II.

### PLAINTIFF'S ALLEGATIONS

Plaintiff sues:  (1) the County of Riverside; (2) the City of Jurupa Valley; (3) the Riverside County Sheriff's Department ("RCSD"); RCSD Deputies (4) Aaron Avila, (5) Bridgette Recksiek, (6) Lycopolous, and (7) Melendez; (8) Deputy District Attorney ("DA") Jennifer Flores; (9) the DA's office's "transcriber" "MD:CP"; Child Protective Services ("CPS") social workers (10) Heather Polak and (11) Alison M. Amaro; and attorneys (12) Anastasia Georggin, (13) Dawn Shipley, (14) Theresa Devries, (15) Stacy McCoy, and (16) Melissa A. Chaitin.  (SAC at 2-7).

---

[1] Plaintiff subsequently filed an Objection to the Magistrate Judge's Order of dismissal with leave to amend, and moved to recuse the undersigned Magistrate Judge.  (Dkt. No. 19).  The District Judge denied the motion on July 16, 2018.  (Dkt. No. 22).

[2] A magistrate judge may dismiss a complaint with leave to amend without the approval of a district judge.  See McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

Plaintiff's claims arise from his arrest and criminal proceedings on domestic violence charges, as well as the juvenile dependency proceedings that resulted in his daughter's temporary removal from her parents' care after his arrest. The Second Amended Complaint asserts ten claims for violations of his constitutional rights, along with nine other claims for violations of state law or common law. (See id. at 8-28). Plaintiff seeks unspecified compensatory damages, punitive damages and civil penalties. (Id. at 29). The allegations and corresponding federal claims are set out below.

The circumstances at issue in the case began when Plaintiff's wife accused him of assaulting her and cutting her shin with a pocket knife. (See id. at 10). On April 11, 2016, Deputies Recksiek and Avila "blocked Plaintiff's car with their patrol vehicle" and detained and questioned Plaintiff "for an extended period of time," despite having no "reasonable suspicion or lawful privilege." (Id. at 8). **Claim 1** asserts that this was an unreasonable seizure in violation of the Fourth Amendment. (Id.).

The next day, April 12, 2016, Recksieck and Avila returned and told Plaintiff that they were not sure that they believed what he had told them the day before. (Id. at 9). Again they had no "reasonable suspicion or lawful privilege," but only an "inarticulate hunch and generalized suspicions." (Id.). **Claim 2** asserts that this incident, too, was an unreasonable seizure in violation of the Fourth Amendment. (Id.).

Recksiek and Avila then instructed Lycopolous and Melendez to arrest Plaintiff and take him to the RCSD Jurupa Valley Station. (Id. at 9). Plaintiff did not resist arrest or try to flee, and the crime for which they arrested him "was not serious." (Id. at 10). Regardless, the deputies left Plaintiff in a cell with his arms handcuffed behind his back for seven hours with no food, water, bathroom breaks, medical attention or access to his medications for diabetes, hyperthyroid or hypertension. (Id. at 9). Plaintiff was in "an extreme amount of pain and hunger." (Id.). Recksiek, Avila, Lycopolous and Melendez all observed Plaintiff during this time and did nothing to stop the mistreatment; they "had an agreement and meeting of the minds to subject Plaintiff to excessive force and cruel treatment." (Id. at 10).

**Claims 3 and 6** are based on this incident. **Claim 3** asserts that the deputies violated the Fourth Amendment by unreasonably seizing him and applying excessive force. (Id. at 9-10). **Claim 6** asserts that RCSD and the County of Riverside are also liable for the Fourth Amendment violations through deliberate indifference to the constitutional rights of Plaintiff and others in their custody. (Id. at 15). Plaintiff alleges that the deputies' actions were part of a custom or policy of RCSC and the County, in which deputies are taught that detainees may be kept in restraints for many hours. (Id.).

**Claim 4** concerns the investigation and police report of the underlying domestic violence accusations. (Id. at 10-13).

Plaintiff alleges that Avila spoke to a witness who told him that Plaintiff was the victim of his wife's physical abuse and that his wife had "[a]lmost killed" him in the past. (Id. at 11). Recksiek and Avila's report stated, however, that the witness told them she "had never talked to V-1 [presumably, Plaintiff's wife] about the abuse." (Id.). The report also falsely stated that Plaintiff told the deputies he liked knives, and it omitted any reference to Plaintiff's need for self-defense in the altercation with his wife. (Id.). Moreover, based on their interview with Plaintiff's wife, the deputies knew that he was "innocent and could not have stabbed his wife" from where he was sitting at the time, but they falsely stated in the report that Plaintiff was sitting next to his wife at the time of the attack. (Id. at 11-12). The deputies "used abusive techniques they knew would yield false information that Plaintiff was next to his wife when she was allegedly cut." (Id. at 12).

Based on the falsified police report, **Claim 4** asserts that Recksiek, Avila and the County of Riverside are liable for the violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizure and the "failure to investigate exculpatory evidence and fabrication of evidence." (Id. at 10 (citing Sialoi v. City of San Diego, 823 F.3d 1223, 1232 (9th Cir. 2016); Devereaux v. Abbey, 263 F.3d 1070 (9th Cir. 2001) (en banc))). Plaintiff claims that the County of Riverside and RCSD are liable for "fail[ing] to train/supervise deputies by providing adequate programs addressing fabrication of evidence." (Id. at 12). He asserts that given that fabrications at issue and "a pattern of

similar violations," the existing program "was likely to result in the deprivation of constitutional rights." (Id.). Moreover, he states that "the need for more or different training is so obvious that the County can reasonably be said to be indifferent to the need." (Id.).

**Claim 4** also incorporates Deputy DA Jennifer Flores and the DA's office's transcriber, "MD:CP." (Id. at 12-13). Plaintiff asserts that they "conspired and acted in concert with Recksiek and Avila to fabricate evidence," specifically by falsely transcribing the video interviews of Plaintiff, his wife and another witness. (Id.). These include the same fabrications as in Recksiek and Avila's police report, as well as other fabrications. (Id. at 13). For example, Flores redacted Plaintiff's wife's statement "I carry a knife," replacing it with "unintelligible," though "[t]he issue in dispute was whether [Plaintiff's wife] had a knife." (Id.). Plaintiff asserts that it is "unlikely that Reckiek, Avila, Flores and 'MD:CP' did not have a common objective and meeting of the minds to fabricate evidence against Plaintiff." (Id.). He further points out that the interview transcripts were not submitted to a jury. (Id.).

In **Claim 5**, Plaintiff asserts that Avila and Recksiek violated his Fourteenth Amendment right under the Equal Protection Clause by intentionally discriminating against him on the basis of his sex and Hispanic ethnicity. (Id. at 14). Specifically, he alleges that his similarly situated, non-Hispanic white wife admitted to

choking and attempting to kill him, but the officers nonetheless fabricated evidence to the contrary. (Id.).

Plaintiff alleges that after his arrest, the deputies sent their "fabricated report" to CPS, and CPS social workers Amaro and Polak filed a juvenile dependency petition on May 5, 2016. (Id. at 16). **Claims 7, 8, 9 and 10** concern the judicial dependency proceedings. (Id. at 16-22). In **Claim 7**, Plaintiff asserts that by filing the petition with false statements, Amaro and Polak violated his Fourteenth Amendment right to due process and his right "to be free from judicial deception." (Id. at 16 (citing Beltran v. Santa Clara Cty., 514 F.3d 906, 908 (9th Cir. 2008) (en banc); Greene v. Camreta, 588 F.3d 1011, 1034 (9th Cir. 2009))). Plaintiff alleges that the petition falsely stated that he was incarcerated and unable to provide care or support for his daughter, despite that Plaintiff had arranged for his daughter to remain with her mother. (Id. at 16-17).

**Claim 8** asserts, similarly, that by signing and filing the juvenile dependency petition with false statements, Amaro and Polak violated his Fourteenth Amendment substantive due process right to companionship and society with his child. (Id. at 17-18). He further asserts that their actions were done in deliberate indifference and reckless disregard of his rights. (Id. at 18). He alleges that in addition to falsely stating that he was unable to support his child, Polak also falsely stated that Plaintiff had a past history of substance abuse and that he and the child's mother engaged in ongoing domestic violence. (Id.). Plaintiff

7

contends that these false statements also failed to provide a proper basis for jurisdiction in the dependency proceedings. (Id.).

**Claims 9 and 10** concern the juvenile dependency hearing. (Id. at 20-22). Plaintiff alleges that the petition was not given to him until after the hearing, and he was unaware of the allegations it contained. (Id. at 20). Thus, he was unable to object to the false statements or the court's lack of jurisdiction. Plaintiff also alleges that his court-appointed attorney, Georggin, failed to act competently by objecting. (Id.). Instead, Georggin conspired with the social workers (Amaro and Shipley), counsel for his daughter (Shipley) and her mother (Devries), and counsel for social services (McCoy) "to allow the judicial deception and violation of Plaintiff's due process rights." (Id. at 20-21). Plaintiff contends that it is reasonable to infer a conspiracy based on Defendants' failure to object to the violations, as it is "unlikely" that these individuals would not know "the basic requirements of a judicial dependency proceeding." (Id. at 21). Plaintiff additionally claims that his appointed appellate attorney, Chaitlin, was part of the conspiracy because she indicated that she had spoken with trial counsel and subsequently filed a brief stating that she should find no arguable issues for appeal, despite that it was "clear that Chaitlin was aware of the constitutional violations." (Id. at 21-22). Based on Defendants' conduct regarding the juvenile dependency proceeding, Plaintiff asserts that Georggin, Shipley, Devries, McCoy, Polak, Amaro and Chaitin violated Plaintiff's Fourteenth Amendment right to due

process (**Claim 9**) and his right "to be free from loss of familial relationship" (**Claim 10**).  (Id. at 20, 22).

## III.

### STANDARD OF REVIEW

Congress mandates that district courts initially screen civil complaints filed by prisoners seeking redress from a governmental entity or employee.  28 U.S.C. § 1915A.  A court may dismiss such a complaint, or any portion thereof, if the court concludes that the complaint: (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  Id. § 1915A(b)(1)–(2); see also id. § 1915(e)(2) ("[The court] shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."); accord Lopez v. Smith, 203 F.3d 1122, 1126–27 & n.7 (9th Cir. 2000) (en banc).

Dismissal for failure to state a claim is appropriate if a complaint fails to proffer "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009);

9

accord <u>Hartmann v. Cal. Dep't of Corr. & Rehab.</u>, 707 F.3d 1114, 1122 (9th Cir. 2013).  A plaintiff must provide "more than labels and conclusions" or a "formulaic recitation of the elements" of his claim.  <u>Twombly</u>, 550 U.S. at 555.  However, "[s]pecific facts are not necessary; the [complaint] need only give the defendant fair notice of what the claim is and the grounds upon which it rests."  <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (<u>per</u> <u>curiam</u>) (citation and alterations omitted).

In considering whether to dismiss a complaint, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).  Moreover, <u>pro</u> <u>se</u> pleadings are "to be liberally construed" and "held to less stringent standards" than those drafted by a lawyer.  <u>Erickson</u>, 551 U.S. at 94 (citation omitted); <u>see also</u> <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010) ("<u>Iqbal</u> incorporated the <u>Twombly</u> pleading standard and <u>Twombly</u> did not alter courts' treatment of <u>pro</u> <u>se</u> filings; accordingly, we continue to construe <u>pro</u> <u>se</u> filings liberally when evaluating them under <u>Iqbal</u>.").  Nevertheless, dismissal for failure to state a claim can be warranted based on either the lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory.  <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will

necessarily defeat the claim.  <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

**IV.**

**DISCUSSION**

Plaintiff's Second Amended Complaint contains deficiencies warranting dismissal, although leave to amend will be granted.  <u>See</u> 28 U.S.C. 1915A(b)(1).

A.    **The Second Amended Complaint Fails To State A Claim Against The Individual Defendants**

Plaintiff alleges violations of Plaintiff's constitutional rights by RCSD Deputies Avila, Recksiek, Lycopolous and Melendez; Deputy DA Jennifer Flores; the DA's office's "transcriber" "MD:CP"; CPS social workers Polak and Amaro; and attorneys Georggin, Shipley, Devries, McCoy and Chaitin.  Despite any changes Plaintiff has made in the Second Amended Complaint, the federal claims against these Defendants remain deficient for the reasons discussed below.

1.    **Claims 1 and 2**

In Claims 1 and 2, Plaintiff alleges that Deputies Recksiek and Avila violated his Fourth Amendment right against unreasonable seizure by detaining him outside his home on April 11 and 12, 2016. (<u>See</u> SAC at 8-9).  However, determining whether "a particular

seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (citation omitted). To state a Fourth Amendment unreasonable seizure claim, therefore, a plaintiff must allege sufficient non-conclusory facts showing that the seizure was unreasonable. Here, Plaintiff states in conclusory fashion that the officers "did not suspect Plaintiff of criminal activity," and detained him "without reasonable suspicion or lawful privilege for an extended period of time." (SAC at 8, 9). Moreover, allegations in support of other claims indicate that the officers were investigating his wife's accusation that Plaintiff had assaulted her with a knife. (See id. at 10). Because Plaintiff does not provide sufficient facts to show how the seizures were unreasonable, Claims 1 and 2 are dismissed with leave to amend.

    **2.**   <u>**Claim 3**</u>

In Claim 3, Plaintiff asserts that Deputies Recksiek, Avila, Lycopolous and Melendez violated his Fourth Amendment rights against excessive force and unreasonable seizures when they kept Plaintiff handcuffed in a jail cell for "nearly seven hours" on April 12, 2016. (See SAC at 9-10). As with unreasonable seizures, excessive force claims are analyzed under the Fourth Amendment's reasonableness standard. Graham v. Connor, 490 U.S. 386, 388 (1989); Smith v. City of Hemet, 394 F.3d 689, 700 (9th Cir. 2005). Reasonable force is the force necessary to secure officers' safety

during a search or arrest. <u>Graham</u>, 490 U.S. at 395. Although Plaintiff's allegations in Claim 3 are more specific than in Claims 1 and 2, the claim still fails to provide adequate information about the circumstances of the incident to demonstrate that the force or prolonged seizure was unreasonable. For example, Plaintiff alleges that the officers did not provide him with "medical attention or his medications for diabetes, hyperthyroid or hypertension," but he does not indicate the nature of these conditions or to what extent the officers knew that he required medical attention to address them at the time, nor does he allege that he suffered any injuries due to the purported lack of attention to his diabetes, etc. (<u>See</u> SAC 9-10). Claim 3 is thus dismissed with leave to amend.

### 3. <u>Claim 4</u>

Claim 4 alleges that Recksiek, Avila, Deputy DA Flores and the DA's transcriber, "MD:CP," violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure by falsifying witness statements in the police report and interview transcripts, constituting a "failure to investigate exculpatory evidence and fabrication of evidence." (SAC at 10-13). To the extent that the claim asserts that Plaintiff's arrest or pre-arrest detention violated the Fourth Amendment, it appears to be duplicative of Claims 1, 2 or 3.[3] Moreover, to the extent that the claim may be

---

[3] Moreover, to the extent that the claim is based on Plaintiff's post-arrest incarceration, the Fourteenth Amendment applies, not the Fourth Amendment. <u>See</u> <u>Rivera v. Cty. of Los Angeles</u>, 745 F.3d 384, 389-90 (9th Cir. 2014) ("[P]ost-arrest incarceration is analyzed under the Fourteenth

based on the use of the police report's fabrications in the juvenile dependency proceedings, it may be duplicative of Claims 7, 8, 9 or 10. As such, the claim is subject to dismissal. See M.M. v. Lafayette Sch. Dist., 681 F.3d 1082, 1091 (9th Cir. 2012) ("It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims.").

In addition, the claim may be barred by Heck v. Humphrey, 512 U.S. 477 (1994), at least to the extent that it is based on the police report's alleged fabrications. In Heck, the Supreme Court held that a court must dismiss a civil rights complaint for money damages if judgment in favor of the plaintiff would undermine the validity of his conviction or sentence. (Id.). Several courts have explicitly found that prisoner civil rights claims alleging the fabrication of evidence or Brady violations are barred by Heck until the prisoner's conviction has been overturned. See, e.g., Cooper v. Ramos, 704 F.3d 772, 785 (9th Cir. 2012) ("Successfully litigating [plaintiff's] claims of an evidence tampering conspiracy would necessarily implicate the validity of his state criminal conviction. These claims are not cognizable unless [plaintiff's] conviction is vacated, overturned, or invalidated." (citing Heck, 512 U.S. at 486-87)). Plaintiff's allegations leave it unclear whether successively litigating the claim would undermine the validity of a conviction obtained based on the alleged fabrications in the police report. As for the interview transcripts, he alleges

Amendment alone." (citing Baker v. McCollan, 443 U.S. 137, 145 (1979); Lee v. City of Los Angeles, 250 F.3d 668, 683-85 (9th Cir. 2001))).

that these were not submitted to a jury, (SAC at 13), suggesting that they are exempt from Heck. However, he does not actually allege whether the fabricated transcripts were used in any way to deprive him of liberty, which is required to state a § 1983 claim of deliberate fabrication. Caldwell v. City & Cty. of San Francisco, 889 F.3d 1105, 1115 (9th Cir. 2018) ("To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." (quotation and citation omitted)). Accordingly, the claim is dismissed with leave to amend.

### 4. Claim 5

In Claim 5, Plaintiff asserts that Avila and Recksiek violated his constitutional right to equal protection. (SAC at 14). To state an equal protection claim, typically a plaintiff must allege that "defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (internal quotation marks and citation omitted; emphasis in original). Here, Plaintiff alleges that Defendants treated him, a Hispanic man, differently than his wife, a white woman, by fabricating evidence against Plaintiff despite his wife's admission that she had actually choked and

attempted to kill Plaintiff. (SAC at 14). Because these allegations fail to raise a reasonable inference that the officers treated him differently <u>because</u> of his race or sex, Claim 5 is dismissed with leave to amend.

### 5. <u>Claims 7 and 8</u>

Claims 7 and 8 allege that CPS social workers Amaro and Polak violated Plaintiff's Fourteenth Amendment rights to due process, "to be free from judicial deception," and to companionship and society with the child when the social workers filed a juvenile dependency petition containing fabrications. (SAC at 16-18). However, social workers are absolutely immune from civil liability for claims concerning their "discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents." <u>Beltran v. Santa Clara Cty.</u>, 514 F.3d 906, 908 (9th Cir. 2008) (quoting <u>Miller v. Gammie</u>, 335 F.3d 889, 898 (9th Cir. 2003)); <u>see also</u> <u>Meyers v. Contra Costa Cty. Dep't of Soc. Serv.</u>, 812 F.2d 1154, 1157 (9th Cir. 1987). This absolute immunity does not extend to claims related to "investigatory conduct" or the fabrication of evidence. <u>See</u> <u>Hardwick v. Cty. of Orange</u>, 844 F.3d 1112, 1116 (9th Cir. 2017); <u>Beltran</u>, 514 F.3d at 908-09. Claims 7 and 8 concern only the filing of the dependency petition, a quasi-prosecutorial function, and the claims do not demonstrate that the social workers deliberately fabricated any evidence, notwithstanding conclusory allegations of their "deliberate indifference" and "reckless disregard." (SAC at 18). Accordingly, the claim is dismissed with leave to amend.

16

### 6.   **Claims 9 and 10**

Plaintiff asserts that social workers Polak and Amaro, along with attorneys Georggin, Shipley, Devries, McCoy, and Chaitin, violated Plaintiff's Fourteenth Amendment right to due process (Claim 9) and his right "to be free from loss of familial relationship" (Claim 10) during the juvenile dependency hearing. (SAC at 20-22).  He alleges that the juvenile dependency petition was not provided to him until after the hearing, and he also suggests that the court lacked jurisdiction.  (Id.).  He alleges that Defendants violated his constitutional rights by conspiring "to allow the judicial deception and violation of Plaintiff's due process rights." (Id. at 20-21).  However, Plaintiff's allegations do not support any reasonable inference that the lawyers – who were representing adverse parties in the dependency proceeding – conspired with state officials to deprive Plaintiff of due process or any other right.  Absent sufficiently specific allegations that the lawyers conspired with state officials to deprive Plaintiff of his civil rights, with detail to render this claims plausible, Plaintiff cannot assert a § 1983 claim against the lawyers.  See Tower v. Glover, 467 U.S. 914, 923 (1984); Crowe v. Cty. of San Diego, 608 F.3d 406, 440 (9th Cir. 2010); Kirtley v. Rainey, 326 F.3d 1088, 1092-94 (9th Cir. 2003).  The claim is dismissed with leave to amend.

B. **Plaintiff Fails To State Claims Against the County of Riverside and RCSD**

Plaintiff additionally alleges that the County of Riverside and RCSD are liable for the officers' fabrications (Claim 4) and their use of excessive force (Claim 6). (SAC at 12-13, 15). A governmental entity may be liable under § 1983 where a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978). To hold a governmental entity liable under Monell, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted; alterations in original).

The Ninth Circuit has noted that a plaintiff may state a cognizable Monell claim based on an entity's "failure to train" where "the need to train was obvious and the failure to do so made a violation of constitutional rights likely." See Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011). However, the Court also emphasized that pursuant to Twombly, "[t]he complaint must contain more than 'a formulaic recitation of the elements of a cause of action' . . . [and] must plead 'enough facts to state a

claim to relief that is plausible on its face.'" Id. at 897
(quoting Twombly, 550 U.S. at 555, 570). Applying that standard,
the Court concluded that the plaintiff's Monell claim, which
alleged only that the defendant's policies caused the
constitutional violations and were the "moving force and/or
affirmative link behind the violation of Plaintiff's constitutional
rights," failed to state a claim. Id. at 900. The Court determined
that such conclusory assertions "lacked any factual allegations
regarding key elements of the Monell claims, or, more specifically,
any facts demonstrating that [plaintiff's] constitutional
deprivation was the result of a custom or practice of the City of
Covina or that the custom or practice was the 'moving force behind
his constitutional deprivation." Id. at 900-01.

Here, Plaintiff fails to provide sufficient allegations to
state Monell claims against the County of Riverside. In Claim 4,
for example, he alleges in a conclusory fashion that the County is
liable for violating his Fourth Amendment rights because the County
"failed to train/supervise deputies by providing adequate programs
addressing fabrication of evidence." (SAC at 12). He asserts that
in addition to Deputies Recksiek and Avila's fabrications in the
police report and Deputy DA Flores and transcriber "MD:CP"'s
fabrications in the interview transcripts, there has been "a
systematic widespread custom of fabricating evidence by Riverside
County employees." (Id.). Plaintiff does not allege any facts
indicating that this "systematic widespread custom" existed. He
claims that "the need for more or different training is so obvious
that the County can reasonably be said to be indifferent to the

need." (Id.). Contrary to these conclusory assertions, however, the alleged distortions in one police report and related interview transcripts do not raise a reasonable inference that the County was deliberately indifferent to such transgressions or the need to adequately train officers or other employees to avoid them.

In Claim 6, Plaintiff claims that the County is liable for Fourth Amendment excessive force and deliberate indifference violations due to the County's custom or policy of teaching deputies that detainees may be kept in restraints for many hours. (Id. at 15). He states that he has "personally seen hundreds of inmates in the Riverside County jails cuffed and shackled inside cells on average from 4:00 a.m. to 7:00 p.m." (Id.). Although the alleged personal observation could support Plaintiff's allegation of a custom or policy, the statement lacks sufficient clarity. For instance, it is unclear whether Plaintiff means that he has seen detainees cuffed and shackled for an "average" of fifteen hours at a time, or rather for brief periods during those hours. Further clarification of these alleged circumstances is needed. The claims against the County are therefore dismissed with leave to amend.

Furthermore, Plaintiff's claims against the sheriff's department (RCSD) are dismissed because they are duplicative of the claims against the County. RCSD is a department of the County and is not a separate "person" under § 1983. See United States v. Kama, 394 F.3d 1236, 1239-40 (9th Cir. 2005) ("[M]unicipal police departments and bureaus are generally not considered 'persons'

1    within the meaning of 42 U.S.C. § 1983."); <u>Vance v. County of Santa</u>
2    <u>Clara</u>, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("The County is a
3    proper defendant in a § 1983 claim, an agency of the County is
4    not.").

5

6    C.    **The Second Amended Complaint Violates Rule 8**

7

8         Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a
9    complaint must contain "a short and plain statement of the claim
10   showing that the pleader is entitled to relief." "Each allegation
11   must be simple, concise, and direct." Fed. R. Civ. Proc. 8(d)(1).
12   Conclusory allegations are insufficient. <u>See</u> <u>Iqbal</u>, 556 U.S. at
13   678, 686. "Experience teaches that, unless cases are pled clearly
14   and precisely, issues are not joined, discovery is not controlled,
15   the trial court's docket becomes unmanageable, the litigants
16   suffer, and society loses confidence in the court's ability to
17   administer justice." <u>Bautista v. Los Angeles County</u>, 216 F.3d 837,
18   841 (9th Cir. 2000) (citation omitted). Rule 8 may be violated
19   when a pleading "says <u>too little</u>," and "when a pleading says <u>too</u>
20   <u>much</u>." <u>Knapp v. Hogan</u>, 738 F.3d 1106, 1108 (9th Cir. 2013)
21   (emphasis in original). A complaint is also subject to dismissal
22   if "one cannot determine from the complaint who is being sued, for
23   what relief, and on what theory." <u>McHenry v. Renne</u>, 84 F.3d 1172,
24   1178 (9th Cir. 1996).

25

26        The Second Amended Complaint violates Rule 8 because its
27   claims lack clarity and precision, and many of the claims fail to
28   provide sufficient factual allegations. Some of the claims,

moreover, fail to clearly indicate which Defendants he is suing for the alleged violations. Without more precision and specificity, Defendants cannot respond to the claims. See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (a complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint). In addition, partly due to the lack of specificity, some of the claims appear to be duplicative. For example, Claim 2, 3 and 4 all allege violations of Plaintiff's right against unreasonable seizures apparently regarding incidents on April 12, 2016, and it is unclear whether the claims concern distinct conduct from one another. (See SAC at 9-13). Similarly, Claims 7 and 8 appear to be duplicative because they are both based on the same conduct (social workers fabricating the juvenile dependency petition) and essentially the same due process right not to be deprived of custody over his child through factual fabrication or judicial deception. (Id. at 16-18). To comply with Rule 8, Plaintiff must make it clear what circumstances and legal theory are at issue in each and every claim. Because the Second Amended Complaint fails to do so, it must be dismissed with leave to amend.

## V.

### CONCLUSION

For the reasons stated above, the Second Amended Complaint is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a Third Amended

Complaint.  In any amended complaint, the Plaintiff shall cure the defects described above.  **Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the original complaint**.  **Plaintiff shall omit any claims that are duplicative or unnecessary**.  The Third Amended Complaint, if any, shall be complete in itself and shall bear both the designation "Third Amended Complaint" and the case number assigned to this action.  It shall not refer in any manner to any previously filed complaint in this matter.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.**  In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims.  Plaintiff is strongly encouraged to keep his statements concise and to omit irrelevant details.  **It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation.  Plaintiff is also advised to omit any claims for which he lacks a sufficient factual basis.**

**Failure to cure the defects described in the order may result in a recommendation to the District Judge that certain claims or**

defendants be dismissed with prejudice.  Plaintiff is explicitly
cautioned that failure to timely file a Second Amended Complaint
or failure to correct the deficiencies described above, will result
in a recommendation that this action be dismissed with prejudice
for failure to prosecute and obey court orders pursuant to Federal
Rule of Civil Procedure 41(b).  <u>Plaintiff is further advised that
if he no longer wishes to pursue this action,  he may voluntarily
dismiss it by filing a Notice of Dismissal in accordance with
Federal Rule of Civil Procedure 41(a)(1).  A form Notice of
Dismissal is attached for Plaintiff's convenience.</u>

DATED:  August 21, 2018

_____
/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

        **THIS  DECISION  IS  NOT  INTENDED  FOR  PUBLICATION  IN  LEXIS,
WESTLAW OR ANY OTHER LEGAL DATABASE.**